2273

Roger D. ROWE and Mitchalene Rowe, Appellants v. Ken HYATT and Imperial Chrysler-Plymouth, Inc., d/b/a Ken Hyatt Chrysler-Plymouth, Inc., Respondents.

(452 S.E. (2d) 356)

Court of Appeals

*Duncan S. McIntosh* and *Grady L. Patterson, III*, both of *Quinn, Arndt, Patterson & McIntosh*, Columbia, *for appellants.*

*S. Jahue Moore*, of *Kirkland, Wilson, Moore, Allen, Deneen & Taylor*, West Columbia, *for respondents.*

Heard Sept. 8, 1994.

Decided Dec. 19, 1994; Reh. Den. Jan. 19, 1995.

CONNOR, Judge:

The Rowes appeal the trial court's ruling which granted Ken Hyatt individually a directed verdict under the Unfair Trade Practices Act and the Regulation of Manufacturers, Distributors and Dealers Act (Dealers Act). We affirm the directed verdict on the Unfair Trade Practices Act and reverse and remand on the Dealers Act.

The Rowes bought a car from Imperial Chrysler-Plymouth. They claim the dealership represented the car to be a 1987 demonstrator when, in fact, it was a 1986 model which had been purchased from a rental fleet. They sued the dealership, and Ken Hyatt individually, for common law fraud, violation of the Unfair Trade Practices Act, and violation of the Dealers Act. They dismissed the fraud claim against Hyatt. After the Rowes presented their case, the trial court directed a verdict for Hyatt individually on the other two causes of action. The jury returned a verdict against the dealership on all three causes of action, and the Rowes elected to recover under the Dealers Act.

Hyatt was the sole shareholder, president, and director of the dealership. He exercised a great amount of control over the dealership, including the right to hire and fire. When they purchased the car, the Rowes had no direct dealings with Ken Hyatt, but dealt exclusively with a salesman at the dealership. No one alleges Ken Hyatt told salesmen to misrepresent cars.

## I. Unfair Trade Practices Act

The trial judge granted Hyatt's directed verdict motion on the Unfair Trade Practices Act under a theory of "controlling person." In *Plowman v. Bagnal*, 450

S.E. (2d) 36 (1994) (Davis Adv. Sh. No. 14 at 5) (Toal and Finney, A.JJ., dissenting), *reh'g granted* and *aff'd,* Oct. 19, 1994, the Supreme Court held that doctrine does not apply to private causes of action under the Unfair Trade Practices Act, but applies only to actions brought by the Attorney General. At oral argument, counsel for the Rowes conceded *Plowman* controls the facts here. Accordingly, we affirm the trial judge's directed verdict on this issue.

## II. Regulation of Manufacturers, Distributors and Dealers Act

The Rowes next argue the trial court erred in granting ██ a directed verdict for Hyatt under the Dealers Act. Although *Plowman* controls on Unfair Trade Practices causes of action, we note key differences between the UTPA and the Dealers Act. The definition of "person" under the UTPA, unlike the definition under the Dealers Act, does not incorporate controlling person language. The Federal Trade Commission analysis relied upon by the majority in *Plowman* is not dispositive in Dealers Act causes of action. The UTPA reads: "It is the intent of th the legislature that in construing paragraph (a) [which defines unfair methods of competition] of this section the courts *will be* guided by the interpretations given by the Federal Trade Commission and the Federal Court. . . ." S.C. Code Ann. § 39-5-20(b) (1985). In contrast, the analogous section of the Dealers Act reads: "In construing paragraph (a) [unfair methods of competition] the courts *may be* guided by the definitions in the Federal Trade Commission Act." *Id.* § 56-15-30(b) (emphasis added). Moreover, Hyatt is statutorily defined as a person responsible for the actions of the dealership. In the definitional section of the Dealers Act, various subsections must be read together. *Chappell v. General Motors Corp.,* 511 F. Supp. 842 (D.S.C. 1980), *aff'd,* 688 F. (2d) 830 (4th Cir. 1982). The term "motor vehicle dealer" is defined in subsection (h) of the statute as "any person who sells or attempts to effect the sale of any motor vehicle." S.C. Code Ann. § 56-15-10(h) (1991 & Supp. 1993). The term "person" is defined in subsection (n) as follows:

> [A] natural person, corporation, partnership, trust or other entity, and, in case of an entity, it shall include any other entity in which it has a majority interest or effectively controls *as well as the individual officers, directors and other persons in active control of the activities of each such entity.*

*Id.* § 56-15-10(n) (emphasis added.)

Hyatt argues the legislature did not intend to include corporations and partnerships as "entities," relying on the lack of a comma between the penultimate item in a series ("trust") and the conjunction ("or"). Although this convention violates the preferred usage, *see* Thomas R. Haggard, *Comma Sense,* S.C. Law., Sept./Oct. 1994, at 7, 9, we have carefully reviewed the Dealers Act and find the convention was used throughout. To hold otherwise would lead to an absurd result because trusts, unlike corporate entities, do not have officers and directors. The legislature would not have intended to extend controlling person liability to entities that do not have controlling persons.

Moreover, section 56-15-40(1) defines misconduct. It provides an act or practice is unfair or deceptive where any "motor vehicle dealer [engages] in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public." S.C. Code Ann. § 56-15-40(1) (1991). In conjunction with the definitions in section 56-15-10, the plain language of the Dealers Act leads to the conclusion a controlling "person" will be held responsible in a private damages action for wrongful conduct engaged in by the dealer.

In this case, the parties do not dispute the conclusion the dealership, through the action of its salesman, engaged in conduct which violated the statute. Officers and directors of corporate entities are not normally personally liable for the actions of the corporation. *Cf. Multimedia Publishing of S.C., Inc. v. Mullins,* — S.C. —, 431 S.E. (2d) 569 (1993); *Sturkie v. Sifly,* 280 S.C. 453, 313 S.E. (2d) 316 (Ct. App. 1984) (cases discussing equitable doctrine of "piercing

the corporate veil"). Liability can, however, be extended statutorily to reach controlling persons.[1]

We must give clear and unambiguous statutory terms ▮▮ their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Gilstrap v. S.C. Budget & Control Board,* — S.C. —, 423 S.E. (2d) 101 (1992). The plain language of the Dealers Act extends liability to controlling persons in actions for private civil damages as well as actions brought by the Attorney General. Even though there is no evidence Hyatt personally engaged in any misconduct that violated the statute, the Dealers Act makes controlling persons liable under these circumstances. Therefore, the trial judge erred in directing a verdict for Hyatt. We reverse and remand for entry of judgment against Hyatt individually for the damages the jury assessed against the dealership.

Affirmed in part, reversed in part and remanded.

GOOLSBY and HOWARD, JJ., concur.

---

[1] We note there are other examples of legislative intent to impose a stricter form of liability in the Dealers Act than at common law. For example, the Act expands the definition of fraud: *"Fraud,"* shall include, <u>in addition to its normal legal connotation,</u> the following: a misrepresentation in any manner, whether intentionally false or due to gross negligence, of a material fact; a promise or representation not made honestly and in good faith; and an intentional failure to disclose a material fact." S.C. Code Ann. § 56-15-10(m) (emphasis added).